FILED

2021 AUG 24  AM 10: 04

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
LOS ANGELES
BY:____KMH____

1  Marlon Abraham Rosasen
2  12223 W. Pico Blvd
   Los Angeles, CA 90064
3  Ph: (323) 561-4001
4  Rosasen.ma@icloud.com
5  Plaintiff *Pro Per*

6

7

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12  MARLON ABRAHAM ROSASEN          Case No. 2:21-CV-06811-JWH-SP
    AND AS GUARDIAN *AD LITEM*
13  FOR HIS TWO CHILDREN D.T.R.     1. COMPLAINT FOR DAMAGES
    and L.A.R.                         FOR CHILD ABDUCTION
14                                     UNDER THE COLOR OF LAW.
              Plaintiffs,              CONSPIRACY TO COMMIT
15                                     INTENTIONAL INFLICTION OF
         v.                            EMOTIONAL DISTRESS,
16                                     MALICIOUS PROSECUTION,
    KINGDOM OF NORWAY AS              CAUSING IRREPARABLE
17  RESPONSIBLE PARTY FOR THE         HARM, INTERFERENCE AND
                                      TERMINATION OF RIGHTS TO
18  FOLLOWING AGENCIES AND            PARENTAL RELATIONSHIP
    INSTRUMENTALITIES, THE            AND DEPRIVATION OF LIFE
19  DEFENDANTS.                       AND LIBERTY.
20
                                    2. COMPLAINT FOR DAMAGES
21  1.COUNTY GOVERNOR OF               FOR CIVIL RIGHTS VIOLATIONS
22  OSLO AND VIKEN                     42 U.S.C. § 1983.
23  DEFENDANTS VALGERD
    SVARSTAD HAUGLAND AND           3. NON-COMMERICAL TORT 28.
24  SUZANNE RUSTEN AND JON            U.S.C. § 1605 (a) (5). FOREIGN
25  DOES.                             SOVERIGN IMMUNITIES ACT
                                      OF 1976.
26
27   2. NORWAY'S MINISTRY OF        4. VIOLATIONS OF THE UNITED
    JUSTICE AND PUBLIC               STATES CONSTITUTION: FIRST,
28

- 1 -

SECURITY, DEPARTMENT OF CIVIL AFFAIRS, DEFENDANTS HANNA KRISTIANE RUMMELHOFF, HEGE SKAANES NYHUS, LINN KROSVEEN, AND JON DOES.

3. NORWAY'S MINISTRY OF CHILDREN AND FAMILIES FOR THE DIRECTORATE FOR CHILDREN, YOUTH AND FAMILY AFFAIRS, DEFENDANT DIRECTOR MARI TROMMALD.

4. ST.HANSHAUGEN, OSLO CHILD PROTECTIVE SERVICES AND MEASURE SECTION, DEFENDANTS PER HELGE NESSE RISE, MARIA KNUDSEN, SILJE ERAKE GUDMESTAD, ANNETTE SOPHIE LORCK-FALK, AND JON DOES.

5. NORWAY'S MINISTRY OF HEALTH AND CARE SERVICES FOR OSLO UNIVERISTY HOSPITAL DEFENDANT THALE BOSTAD AND JON DOES.

Defendants.

FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS.

5. VIOLATION OF THE UNITED NATIONS CONVENTION ON THE RIGHTS OF THE CHILD ARTICLES 3, 9.1 AND 10, AND VIOLATION OF THE HAGUE CONVENTION'S CIVIL ASPECT OF INTERNATIONAL CHILD ABDUCTION ARTICLES 3(b), 7(f) AND 21.

6. VIOLATION OF THE UNITED STATES CONSTITUTION: JUDICIAL DECEPTION.

7. PUNITIVE DAMAGES UNDER CAL.PEN.CODE § 278 AND § 502.

8. VIOLATIONS OF STATUTORY PROVISIONS: 18 U.S.C. § 1961, *et seq.*

9. PRAYER OF RELIEF AND AWARDING OF DAMAGES.

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Marlon Abraham Rosasen, ("Mr. Rosasen"), and as guardian *ad litem* for his two minor children, Plaintiffs D.T.R. and L.A.R., alleges upon

knowledge as to himself and his own actions and upon information and belief as to all other matters, as follows:

**JURISDICTION AND VENUE**

1. This Court has subject-matter and personal jurisdiction pursuant to 28 U.S.C. § 1330 (a) which provides for jurisdiction over foreign States.

2. This Court has subject-matter and original jurisdiction under 28 U.S.C. § 1331 as a federal question jurisdiction arises pursuant to the foreign Sovereign Immunities Act of 1976 (FSIA): 28 U.S.C. § 1605 (a) (5), 28 U.S.C. § 1441(a).

3. This Court has jurisdiction under 28 U.S.C. § 1332 (a) which provides for jurisdiction over citizens of a State and citizens or subject of a foreign State and a foreign State itself, where the amount in controversy as here exceeds $ 75,000.

4. The Court has jurisdiction over cases filed against foreign States instrumentalities and agencies for their actions under the commercial activity exception to the foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605 (a)(5) which provides: (a) a foreign State shall not be immune from the jurisdiction of Courts of the United States or of the States in any case--... (5) not otherwise encompassed by {the commercial activities exception}in which money damages are sought against a foreign State for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious acts or omission of that foreign State or of any official or employee of that foreign State while acting within the scope of his office or employment: except this paragraph shall not apply to—(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

5. The non-commercial tort exception of 28 U.S.C. § 1605 (a) (5) applies as

restitution for damages are sought for torts committed in the United States.

6. Plaintiffs reside in the Court's jurisdiction and are all United States citizens.

7. Venue is proper in the U.S. District Court located in the Central District of California pursuant to 28 U.S.C. § 1391 as the events laid out in the complaint happened in this Court's jurisdiction.

8. Article 3, § 2 of the United States Constitution extends the judicial power of federal Courts to "all cases between a State, or the Citizens thereof, and foreign States, Citizens or subjects".

9. Venue is proper in the U.S. District Court located in the Central District of California pursuant to 28 U.S.C. § 1608 as damages pursuant to 42 U.S.C. § 1342 (3) (civil rights) are sought.

## **PARTIES**

10. Plaintiff, **Marlon Abraham Rosasen, ("Mr. Rosasen")** is a 39-year-old United States citizen.

11. Plaintiffs, **D.T.R.** and **L.A.R.**, (**"the Children" or "Plaintiffs"**), are twins, 6-years old, United States citizens and the Children of Mr. Rosasen and Thea Marie Rosasen, ("Mrs. Rosasen"), a 29-year-old Norwegian citizen. Mr. Rosasen has joint legal custody of the Children with Mrs. Rosasen.

12. **Defendants, the Kingdom of Norway**, is a foreign Sovereign as defined by the foreign Sovereign Immunities Act of 1976. The Kingdom of Norway is party to the European Court of Human Rights ("ECHR") and signatory to the European Convention on Human Rights, and has, on information and belief, been found guilty at the ECHR for violating the rights to family, eight (8) times since 2018.

13. Defendant 1, County Governor of Oslo and Viken, with named Defendant, **County Governor Valgerd Svarstad Haugland ("Haugland"), Suzanne Rusten ("Rusten")** and **JON DOES**.

14. Defendants 1 have paid legal fees and denied information about the children.

Defendants 1 mailing address is: P.O. Box 325, 1502, Moss, Norway.

15. Defendant 2, Norwegian Ministry of Justice and Public Security, Department of Civil Affairs, with named Defendants **Hanna Kristiane Rummelhoff, ("Rummelhoff"), Hege Skaanes Nyhus ("Nyhus"), Linn Krosveen ("Krosveen"),** and **JON DOES.**

16. Defendant 2 retained the law firm of Holland & Knight and have facilitated in international child abduction under the color of law. Defendant did not perform due diligence and have had a wanton and intentional disregard for Plaintiff's rights. Defendant 2's office is at: 4A Gullhaug Torg, Oslo, P.O. Box 8005 Dep, 0030, Oslo, Norway.

17. Defendant 3, Norwegian Ministry of Children and Families for the Norwegian Directorate of Children Youth and Family Affairs with named Defendant **Mari Trommald, ("Trommald") and JON DOES.** Ms. Trommald have supervised the Norwegian Child Protective Services, ("NCPS") activities, since 2010, including the forcible adoption programs. Defendant's office is at: 3 Fredrik Selmers vei, Oslo, P.O. Box 2233, 0030, Tønsberg, Norway.

18. Defendant 4, Oslo Child Protective Services, Measure Section, with named Defendant supervisor **Per Helge Nesse Rise ("Rise")**, **Maria Knudsen ("Knudsen"), Silje Erake Gudmestad ("Gudmestad"), Annette Sophie Lorck-Falk ("Lorck-Falk"),** and **JON DOES** have caused Plaintiff's damages including, but not limited to, intentional infliction of emotional distress as well as physical and psychological irreparable harm. Defendant 4's employment is at: 25 Stensbergsgata, Oslo, P.O. Box 6999 St. Olavs plass, 0170, Oslo, Norway.

19. Defendant 5 is the Ministry of Health and Care Services for Oslo University Hospital, with named Defendant **Thale Bostad, ("Bostad")**. Defendant Bostad misrepresented the facts and have caused Plaintiff's damages including, but not

limited to, intentional infliction of emotional distress, alienation of affection, and irreparable physical and psychological harm. Defendant 5's office is at: 11 Åkebergveien, Oslo, P.O. Box 4950 Nydalen, 0424, Oslo, Norway.

20. All Defendants are employees of the foreign Sovereign and acted within the scope of their employment of the foreign Sovereigns instrumentalities and agencies. The actions were intentional, systematic, fraudulent, willful, wanton, malicious and oppressive, and were committed in conscious disregard of the civil rights of Plaintiffs. Further the tortious actions are systematic violations off the United States Constitution as well as the foreign Sovereign's commitment to international law and treaty obligations. Defendant have caused Plaintiffs, the Children, and Mrs. Rosasen among others, irreparable psychological and physical harm and distress.

21. None of the Defendants were upon knowledge and belief at the time of the tortious actions protected by diplomatic immunity as the case was in *Risk V. Norway*, Case No. C-88-1435WWS, from the U.S. District Court in the Northern District of California.

## **NATURE OF ACTION**

22. Plaintiffs alleges interference with the Children's rights to parental consortium, intentional infliction of emotional distress, humiliation, personal injury, physical and psychological harm, and disruption of parental relationship by the conspiring actions by Defendants to kidnap under the color of law and thereafter hide and detain the Children in the foreign Sovereign's jurisdiction.

23. The Norwegian Child Protective Services; hereafter referred to as ("NCPS"), took custody of Plaintiff as a child in 1989 by kidnapping under the color of law. NCPS again seized Plaintiff and Plaintiff's brother from Sweden in 1994 by falsely implying Plaintiff, Plaintiff's mother, and Plaintiff's brother were "also" Norwegian citizens.( EXHIBIT 1, p.1-2, p.5). Defendants followed an identical

pattern in order to seize the children, from the legal and physical custody of their mother (June Elizabeth Rosasen), Ms. Rosasen. Ms. Rosasen subsequently lost permanent custody of her children. ( EXHIBIT 1, p.10-39).

24. Plaintiff succeeded in returning to the United States in 1996 where The Seventh Circuit Court of Rapid City, South Dakota ruled that Plaintiffs' mother, Ms. Rosasen, was the rightful custodian and granted her legal and physical custody. (Case # 51JUV96-9065). ( EXHIBIT 1, p. 3-4).

25. Plaintiff therefore had first-hand experience of the traumas NCPS can have on children's rights, in the fall of 2019. (*See* EXHIBIT 1).

26. The Defendant's judicial history shows a systematic flaw by Norway's agencies and instrumentalities ability to protect children's fundamental rights.

27. Since 2018, Defendants have eight (8) convictions for violations of fundamental rights, all in cases related to children, and 42 cases pending before the ECHR. In comparison, Sweden, with twice the population, has none in its judicial history.

28. Defendant's history shows a rampant chauvinistic belief that it is better to raise children in Norway than anywhere else. The United Nations and the European Union have demanded judicial and legislative change. ( EXHIBIT 2, p.41-53).

29. Norway was also a Defendant in the United States Northern District Court of California, *Risk V. Norway*, Case No. C-88-1435, which also involved international child abduction and wrongful detention. Now the Kingdom of Norway have again acted in blatant disregard of U.S. Courts. (*See* EXHIBIT 2).

30. Plaintiff alleges on his own behalf and on behalf of the Children, that Defendants conspired to kidnap, under the color of law, American citizen children and deny the Children parental physical consortium pending appeal in a manner violating the First, Fourth, Fifth, Sixth and Fourteenth Amendment of the United States Constitution.

31. The tortious actions also violated the foreign Sovereign's international treaty

obligations under The Hague Conventions Civil Aspects of International Child Abduction, ("The Hague Convention") article 3(b), 7(f), and 21; and The United Nation Convention on the Rights of the Child ("UNCRC") article 3, 9.1, and 10.

32. Defendant has demanded, via the foreign Sovereign Judiciary as well as through Defendant's retained and financed foreign counsel, that Plaintiff withdraw appeal in related case before the United States Ninth Circuit Court of Appeals, Case No. 20-55459 or suffer the consequences and accept fault for the Children not being allowed physical or emotional consortium. Plaintiff alleges these actions in and by themselves constitute civil right violations. ( EXHIBIT 13, p. 439-442 and EXHIBIT 18, p.518).

33. On October 30, 2020, The U.S. Department of State sent a Hague Convention Civil Aspects of International Child Abduction ("Hague Convention") for the Children's return due to wrongful retention. Plaintiff alleges this suit will show that it is Defendants that are the culprit behind the malicious prosecution, wrongful removal and wrongful retention. (EXHIBIT 13, p. 437).

34. Defendants denied returning the Children and refused any temporary visitation. Defendants were than informed as an attempt at ADR, that continued denial of a temporary physical access plan pending appeal, would result in Plaintiff needing to review the merits for a FSIA suit, referencing Risk V. Norway.

35. Plaintiff was banned from re-entry into Norway in 2019 primarily due to cannabis related crimes, and therefore had no option but to stay in California, after Mrs. Rosasen was pressured into absconding from their mutual agreement.

36. From July 31, 2019, to April 3, 2020, Plaintiffs were abandoned as Mrs. Rosasen, stated she "had no choice as a result of NCPS."(*See* EXHIBIT 3).

37. This complaint alleges Defendants have willfully and knowingly conspired and participated in international child abduction and wrongful retention of the Children, in violation of international law and treaties.

38. Defendants have thereafter attempted to deny Plaintiffs their constitutional right to appeal by refusing to consider physical consortium unless Plaintiff Mr. Rosasen first withdraws appeal in related case.

39. Due to the above, Plaintiff alleges this complaint will show that Defendants are in violation of the foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1605 (a)(5) non-commercial tort for 42 U.S.C. § 1342 (3)(civil rights) violations.

40. Defendants have by their tortious actions caused Plaintiffs irreparable psychological and physical harm and distress, and Plaintiffs have suffered among others, humiliation and loss of freedom and liberty. Plaintiffs are the victims of the foreign Sovereigns, the Defendants blatant disregards of the law and civil rules of procedures in both Defendant jurisdictions and Plaintiffs, and Plaintiff therefore believes this case merits being heard.

## STATEMENT OF FACTS

41. Plaintiff and Mrs. Rosasen married in the United States in October 2013. On July 29, 2015, the twins, D.T.R. and L.A.R., were born as United States citizens.

42. On August 1, 2016, Plaintiffs settled in California and the Children had vaccinations done and were enrolled at Future Stars Preschool located at 4946 W 20Th St, Los Angeles, CA 90016. (*See* EXHIBIT 4 UNDER SEAL.)

43. On May 29, 2019, Plaintiff was given notice of deportation for ten (10) years from the Schengen area, and denied a temporary work visa. Mr. Rosasen originally did not object as the stay was always intended temporary.

44. On June 26, 2019, Ph.D. Erik Skatvedt ("Dr. Skatvedt"), Plaintiff's psychologist for five (5) sessions, contacted Plaintiff three months after ended sessions, alleging that his superior, Bostad, Defendant 5, who Plaintiff had met once on February 12, 2019, had demanded a concern be sent to NCPS. Dr. Skatvedt stated that he "did not believe NCPS would remove physical custody."

45. On July 2, 2019, Plaintiff was returned to the United States and on the same

day, Defendant initiated an investigation into Mrs. Rosasen's parental abilities.

46. On July 4, 2019, Mrs. Rosasen was summoned to NCPS by July 18, 2019. As a result, Mrs. Rosasen requested Mr. Rosasen fly with her and the Children back to Los Angeles, California.

47. As a result, on July 9, 2019, Plaintiff arrived in Denmark, and, on July 11, 2019, Mrs. Rosasen brought The Children, and their U.S. passports, to the safety of Denmark.

48. On July 15, 2019, Mrs. Rosasen was approved for an ESTA visa and subsequently bought four one-way tickets for Los Angeles, California on July 23, 2019, ( both Mr. and Mrs. Rosasen's mutual birthday), for August 30, 2019. ( EXHIBIT 3,p.103-104, EXHIBIT 5, p.160-170).

49. On July 20, 2019, Mrs. Rosasen, registered as having immigrated to Denmark and informed Defendant 4, who insisted it still had jurisdiction over the Children, who are U.S. citizens. ( EXHIBIT 5, p.171-175).

50. On July 31, 2019, Mrs. Rosasen left the Children in Plaintiff's care after agreement and by doing so gave up physical custody. ( EXHIBIT 3, p.109).

51. On July 31, 2019, and again on August 2, 2019, Sigrun Engerud, ( Engerud) the Children's grandmother contacted NCPS and informed that she would try to talk Mrs. Rosasen out of returning home as agreed after the facts. (EXHIBIT 3, p.1).

52. Starting on August 3, 2019, the NCPS police logs show the Defendants deployed the police to show up unannounced at Mrs. Rosasen's residence and place of employment. ( EXHIBIT 3, p.130-132).

53. On August 7, 2019, NCPS officers and police located Mrs. Rosasen at work, and notified her to appear in person at the NCPS office on August 9, 2019.

54. On August 9, 2019, NCPS informed Mrs. Rosasen that the Children should be brought to Norway without Plaintiff, and that if Mrs. Rosasen cooperated, the agency would for now be less concerned with Mrs. Rosasen's parental abilities.

After the meeting, Mrs. Rosasen alerted Plaintiff and, on the following day, Plaintiffs safely returned home to The United States. (EXHIBIT 3, p.123-126).

55. On August 13, 2019, NCPS was informed that the Children had returned to the United States and therefore contacted Defendant 5 who stated that the family was homeless, and that Plaintiff was incarcerated for violent offenses, when in fact both statements are false and defamatory. (EXHIBIT 3, p.111-112).

56. Based on the following, and on information and belief, the Children would have been taken by Defendant 4, were it not for Mr. and Mrs. Rosasen's joint agreement in the fall of 2019.

57. On August 30, 2019, Mrs. Rosasen failed to return to the United States and did not use the one-way tickets. (*See* EXHIBIT 5.)

58. On September 13, 2019, Plaintiff contacted EUR Abduction Officer Darnell Posey at the U.S. Department of State, Office for Children Issues, for assistance with locating Mrs. Rosasen.

59. On September 18, 2019, witness Geir Høyseth, (Mr. Høyseth) met with Mrs. Rosasen and offered to travel with her to Los Angeles to at least visit the Children, make a co-parenting agreement, and attempt reunification. However, Mrs. Rosasen stated that she could not travel as NCPS had started investigating her and demanded she not go. Audio recordings will be presented along with witness testimony at trial.

60. On September 23, 2019, Plaintiff filed for separation and joint custody at the Los Angeles Superior Court of California case no. 19STFL11397 and served Mrs. Rosasen on October 4, 2019. (Exhibit 3, p.135-137).(*See* EXHIBIT 6.)

61. On October 15, 2019, as a result, Mrs. Rosasen had again promised to return but cancelled due to Defendants intentional torts.

62. On October 21, 2019, Defendants after Mr. Rosasen had requested separation, failed to conduct its due diligence and sent a request for The Children's "return"

despite the fact that the family's habitual residence by mutual agreement had always been California. NCPS Defendant 4, thereafter closed its investigation.

63. On November 7, 2019, the Defendant's summoned Hague Convention arrived at the U.S. Central Authorities and Defendants retained the law firm of Holland & Knight in order to bypass the diplomatic process and deceive the U.S. Courts.

64. On November 20, 2019, the U.S. State Department sent the Hague Convention application in return to Defendants after discrepancies had been found. Norway failed to respond and rather circumvented regular protocol. (*See* EXHIBIT 7 and *see* EXHIBIT 18).

65. On December 16, 2019, Plaintiff filed an Emergency Motion prohibiting the Children from being removed from Los Angeles County and notified Mrs. Rosasen of the hearing to be held December 18, 2019. (EXHIBIT 6, p.182).

66. On December 18, 2019, Defendants' counsel failed to make their appearance known, having sent an observer, who did not object to the Emergency travel ban due to abandonment. (*See* EXHIBIT 8): *(Transcript 1). 12.18.2019, (p.221-226). 2). 12.23.2019,(p.227-253). 3). 12.30.2019,(p.254-260). 4). 01.10.2020,(p.261-322). 5). 01.24.2020,(p.323-333). And 6). 03.03.2020, (p.334-367).*

67. On December 19, 2019, Defendant filed a under seal motion and held a hearing on December 23, 2019, initiating this Court related Case No. 19-cv-10742-JFW.

68. The under-seal petition was malicious prosecution, set out to bypass and violate Plaintiffs' civil rights. The motion was denied in part because the Court had prior contradictory knowledge of Plaintiff from this Court's Case No. 16-CR-502-JFW.

69. On December 25, 2019, Mrs. Rosasen arrived with Engerud at Los Angeles Airport, in Los Angeles County and was served the temporary custody order and travel ban. (EXHIBIT 6, p. 188).

70. From December 25 to January 3, 2020, at the advice of the Defendant's

counsel, Mrs. Rosasen and Engerud refused to meet Plaintiffs as it would show that the location of Plaintiff was known and allow the Los Angeles Sheriff Department to serve Plaintiff and give 60-days to prepare a response as is normal procedure in civil litigation. These are but some of the laws that Defendant attempted to bypass. On December 30, 2019, as seen in transcripts, Defendant again asked the Court under seal for an arrest warrant but was denied.

71. On January 6, 2020, Mrs. Rosasen defied Defendants wishes and met with Plaintiffs. On the same day Defendants retained counsel filed a request for a warrant for an arrest in State Court which was granted January 8, 2020.

72. On January 8, 2020, Plaintiffs met Mrs. Rosasen and spent the day together. On the eve of the same day, Plaintiff called Defendant 4, and asked for guarantees that The Children not be taken if they visited Norway with Mrs. Rosasen.

73. Defendant refused to provide reassurances siting the case was complicated but agreed to send the documents to the law firm of Larson Obrien at counsel Hilary Potashner ("Mrs. Potashner") as Mr. and Mrs. Rosasen have joint custody.

74. On January 10, 2020, Plaintiff was informed by the family law Court Judge that the case was stayed pending the outcome of the Hague Convention, Case No. 20STHC00001. At Court, Mrs. Rosasen stated that Plaintiff was a good father and had no concerns for the Children in Plaintiff's care. However, Defendant counsel wanted GPS trackers on the Children, which the Court denied and ordered the Children to remain with Mr. Rosasen.

75. On January 11, 2020, and on January 12, 2020, Plaintiffs met with Mrs. Rosasen and Engerud in the hope Mrs. Rosasen would stay and help co-parent.

76. On February 4, 2020, Plaintiff filed a removal of the civil actions to federal Court. Plaintiff also wrote a pro per removal not filed, here attached. ( *See* EXHIBIT 9).

77. On February 11, 2020, Plaintiff filed a notice of motion to dismiss for perjury

and criminal harassment. However, on February 13, 2020, Plaintiff's former counsel Tera D. Lee ("Mr. Lee") stipulated that The Hague Convention petition should take precedence and be heard prior to Plaintiff's motion to dismiss.

78. On February 12, 2020, Defendant informed that it had in fact not complied with the regular verification process. ( EXHIBIT 7, P.217).

79. On February 18, 2020, Plaintiff created a PACER account and subsequently discovered the unauthorized filings, but Mr. Lee refused to retract until after an expedited scheduling order had been set.

80. On March 3, 2020, Plaintiff was given access to the under-seal petition with 184 allegations and had to respond within 24 hours as the Court merged Case No. 19-cv-10742-JFW with Plaintiff's removal to federal court for civil rights violations, Case No. 20-cv-01140-FMO.

81. On March 3, 2020, Plaintiff e-mailed Defendant 2, Rummelhoff for assistance with translations and ADR, but Defendant refused.

82. On March 9, 2020, Defendant did provide the same translation upon request by Defendant's counsel.

83. On March 16, 2020, Plaintiff's counsel reported exposure to COVID-19 and the Court continued trial to April 7, 2020. Plaintiff's counsel's doctor specifically told the court that counsel was to isolate and to not engage in any work at all. Thus, Plaintiff's counsel became unavailable.

84. On March 24, 2020, Defendants' U.S retained counsel filed an *ex parte* motion and falsely misstated the motion was a joint request for a tentative ruling and statement of decision. This action in and by itself has among others caused Plaintiffs irreparable physical and psychological harm and emotional distress.

85. On March 25, 2020, the Court informed Plaintiff that the Court would await counsel's full recovery before proceeding. Due to the Court using the word passionate in an e-mail describing Plaintiff's demeanor, Plaintiff assumed the

Court knew that Plaintiff's had been abandoned. The Court reassured Plaintiff that nothing would occur until Plaintiff's counsel had recovered. (*See* EXHIBIT 10).

86. On March 31, 2020, the Court, due to the above, denied the *ex parte* request for a tentative ruling and Statement of decisions and rather revoked trial. Plaintiff was never notified or served, or otherwise given due process, but had the March 25, 2020, e-mail from the Court as seen above.

87. On April 2, 2020, Plaintiff was contacted by Marika Rondeby, (Mrs. Rondeby), who wanted to know if Plaintiff had been served. Upon information and belief, the Court contacted Special Agent Richard Ryan at the FBI, who contacted Mrs. Rondeby. The Court than stayed its order from Docket No. 96, revoking trial, in Docket No. 101 and rather scheduled a conference for April 7, 2020.

88. On April 3, 2020, Defendants' counsel filed an opposition that was a misrepresentation of the facts. As a result, the Court ordered the previous orders cancelled and for the U.S. Marshalls to seize the Children. Proof and expert testimony that Defendants tortious actions and deceit upon this Court lead to the above actions, will be presented at trial.

89. On April 3, 2020, at 10:18 p.m., in Dubeque, Iowa, law enforcement detained and handcuffed Plaintiff and led the Children away without an opportunity to say good-bye. The results were that the ability for due process, cross examination of witnesses and alleged accuser, oral argumentation, appeal and other constitutional rights were denied and continues to this day.

90. The Children were put on a 14-hour flight despite a global pandemic with risk of exposure to COVID-19. On information and belief, law enforcement body camera footage will be submitted at trial.

91. The Defendant's deceit upon this Court caused the Children to experience irreparable physical and psychological harm and become victims of a foreign

Sovereign State's demanded child abduction and racketeering.

92. At an NCPS meeting in June 2020, Mrs. Rosasen was advised to flee and refuse the Children to say goodbye and NCPS encouraged no consortium with Plaintiff. ( EXHIBIT 11, p.408. p.411-414).

93. On April 7, 2020, according to Court documents, the Children landed in Norway. Plaintiff alleges that Defendant's instrumentalities and agencies seized legal custody of Plaintiffs at that point, and that Mrs. Rosasen is only allowed to retain physical custody as long as she agrees that the Children shall grow up in Norway and have no contact with their father, Mr. Rosasen.

94. On April 23, 2020, Defendant 2 sent a notice of concern to Defendant 3 and 4 informing that The Children where in Norway. In response the NCPS reopened its investigation into Mrs. Rosasen's parental abilities. ( *See* EXHIBIT 11).

95. On May 4-6, 2020, Mrs. Rosasen agreed to 2-month a year vacation time for the Children in the United States. However, at the meet and confer on May 6, 2020, Defendant's counsel informed that Defendants were heavily invested, and that it reserved the right to refuse the parties to enter any agreement, *in* violation of their fundamental rights to self-determination. ( EXHIBIT 18, p.518).

96. As a result, Plaintiff filed Emergency Motion Docket No. 6 on May 18, 2020, with The Ninth Circuit Court of Appeals Case No. 20-55459, which upon belief halted the removal of the Children from Mrs. Rosasen physical custody at that time. (*See* EXHIBIT 12).

97. On June 5, 2020, The Ninth Circuit Court of Appeals denied the Emergency Motion.

98. However, on July 13, 2020, Mrs. Rosasen informed Plaintiff, that the NCPS had closed the investigation. ( EXHIBIT 18, P.519).

99. On July 29, 2020, the Children's birthday, NCPS officially closed the case. Plaintiff believes that the Emergency Motion is the reason Defendants did not

take the Children from Mrs. Rosasen at that time, as Defendant were informed that such actions could risk the Children being ordered home by U.S. Courts.

100.    On August 14, 2020, Defendants' counsel filed a motion to dismiss Plaintiff's notice of appeal. The United States Ninth Circuit Court of Appeals denied Defendant's motion and instead granted Plaintiffs opposition and motion for appointment of counsel.

101.    On October 30, 2020, after interference and denial of a physical access plan, Plaintiff filed a Hague Convention request for the Children's return for wrongful removal. However, after review, the U.S. Department of State, amended the petition to wrongful retention rather than wrongful removal.

102.    On December 7, 2020, The Ninth Circuit Court of Appeals in Docket No. 19, Case No, 20-55459, granted Plaintiff's motion for appointment of counsel.

103.    On December 14, 2020, after Defendant were informed of Docket No. 19, Defendants offered to consider vacation time for the Children in the United States, but only if Plaintiff first withdrew his appeal.

104.    On December 17, 2020, The Oslo District Court held a hearing where Plaintiff was not given proper ability to be heard, not given the ability to contradict or confer with retained counsel in the cross examination and denied closing arguments. Plaintiff's foreign counsels thereafter resigned. Audio, photos and expert testimony will be presented at trial.

105.    On December 23, 2020, the Court ruled in a manner violating international laws and treaties and proof will be submitted upon trial.

106.    On February 1, 2021, Defendant 2 replied to an email from Plaintiff informing that Norway would not honor a U.S. Court order and it was Defendant 2's, Rummelhoff's, last day of employment. (*See* EXHIBIT 13).

107.    On February 11, 2021, the Borgarting Court of Appeals upheld the city Court's decision but stated that if the United States Ninth Circuit Court of

Appeals was to find grave errors in the Central District Court of California's decision of March 31, 2020, and order the Children returned, that the Court might comply. (*See* EXHIBIT 14).

108.   On March 5 and on March 18, 2021, Plaintiff appealed, *pro per*, the Borgarting Court of Appeals decision to The Norwegian Supreme Court.

109.   On March 25, 2021, Mr. Rosasen received a letter from Defendant 1 and Defendant 2, where Defendants refused to provide a copy of information related to the case concerning the Children and the case despite Plaintiffs shared legal custody. (*See* EXHIBIT 15).

110.   On March 29, 2021, as a direct result of Plaintiff informing Defendants that if The Children are not allowed physical consortium pending appeal, Mrs. Rosasen told Plaintiff that The Children would call for a good night story, after calling 3 times weekly since November 2020, but instead The Children have not been heard from since, causing immense additional suffering of emotional and physical harm and distress.

111.   On April 7, 2021, opposing counsel did not oppose or contradict Plaintiffs' appeals. On April 8, 2021, the Borgarting Court of Appeals sent the appeal to the Defendant Supreme Court, which upon information and belief, was denied on April 9, 2021. However, Plaintiff, as of the date of this filing, has not been served but informed by The U.S. Department of State, Office of Children's Issues that the Defendant had denied the Hague petition both for return and access pending appeal and that the agency cannot not publicly criticize the foreign Sovereign Judiciary's decisions. ( EXHIBIT 7, P. 218).

112.   On April 28, 2021, Plaintiff applied with Norwegian Immigration to have the travel ban temporarily lifted in order to participate in person during trial and facilitate physical visits for Plaintiff's. The application was supported in letter from the presiding Judge. On May 7, 2021, the application was denied.

Norwegian Immigration is an agency under Defendant 2's jurisdiction.

113.   On May 18, 2021, after Defendants failed to respond to the U.S. Department of State's requests to confirm that the Children remain in Mrs. Rosasen's custody, Plaintiff's foreign counsel Arvid Sjodin, (Mr. Sjodin) finally reached Mrs. Rosasen who confirmed that the Children still were in her custody.

114.   Mr. Sjodin's legal advice is for Plaintiff to withdraw appeal in the United States as a lost cause, as Norway "never" will comply with a U.S. Court order.

115.   On May 19, 2021, Plaintiff again wrote Mrs. Rosasen foreign counsel, requesting information on the Children and a physical visitation plan. As a result, on May 25, 2021, Plaintiff received an email from foreign counsel, demanding Plaintiff relinquish legal and physical custody by signing an attached form and providing a copy of Plaintiff's passport. Foreign counsel threatened Plaintiff, stating that if he did not comply by June 8, 2021, Defendants, through Mrs. Rosasen, would file to determine Plaintiff's parental rights permanently in Defendant's jurisdiction despite appeal before U.S Courts. (*See* EXHIBIT 16).

116.   On May 24, 2021, the Judge assigned the Norwegian Court case and who had supported temporarily lifting the ban to facilitate visitation for The Children and in person appearance for trial, was replaced and granted motion to provide transcripts during trial revoked. Plaintiff objected due the Judge recent employment at Defendant 2 place of office, but Plaintiff was overruled.

117.   On May 25 and May 26, 2021, Plaintiff participated in Court proceedings *pro per*, having filed suit against the Norwegian Immigration for its denial of a temporary work visa on May 29, 2019.

118.   All three witnesses during the above-mentioned trial, confirmed that Mrs. Rosasen changed her mind after the facts and that the witnesses in their conscious, views the visitation ban to be a human rights violation.

119.   On June 4, 2021, Plaintiff filed an Emergency motion Docket No. 20 and

Docket No. 22, requesting physical parental consortium pending appeal and release of body cameras for evidence upon appeal. (*See* EXHIBIT 17).

120.  On July 18, 2021, plaintiff received documents from Defendant 2, dated February 15, 2021, where the Defendants confirms that it has documents which cannot be released as it will be damaging to Norway's foreign policy interests if made unclassified. The files further shows that the Defendants ignored and circumvented the U.S. Department of State request for additional information. (*See* EXHIBIT 18)., ( EXHIBIT 7, p. 214-217).

121.  Plaintiff ascertains that California is the Children's habitual residence and that filing suit in Defendant's jurisdiction to lift the ban, is meant to better facilitate visitation pending appeal and Plaintiff's ability to himself travel to Norway and bring his Children home.

122.  On June 14, 2021, the foreign Sovereign courts upheld the entry ban concluding that despite Plaintiff strong ties to the country, the ties had since diminished, and that Plaintiff had not presented proof that The Children suffer more than other children would. The decision is based on a discriminatory and racial, ethnical profiling and evidence and witness testimony will be presented at trial.

123.  The Defendants actions have also violated the foreign Sovereign own internal laws. Plaintiff therefore holds that the discretionary function exception is inapplicable in this suit, when an employee of a foreign government violates its own internal law, its international law and treaty obligations and as here alleged violated Plaintiff in a manner believed allowing for both criminal and civil liability.

124.  Plaintiff refers to the case of *Liu v. Republic of China*, 892 F.22d 1419 (9th Cir. 1989) and *Letelier v. Republic of Chile*, 488 F. Supp. 655 (D.D.C. 1980). In the first case the court refused to apply the discretionary function exception to

the FSIA, because the torts in that case violated Racketeering Organized Crime laws, ("ROC law"). In the second case, the district court refused to apply the discretionary function exception, stating that "there is no discretion to commit, or to have one's officers or agents commit, an illegal act, whatever policy options may exist for a foreign Sovereign, it has no 'discretion' to perpetrate conduct designed to result in the assassination of an individual or individuals". In this case plaintiff believes that the Defendants are not immune from suit due to the discretionary function, as in the matter of Larry *Risk v. Norway*.

125.   It is unknown at the time of this filing, who has physical custody of The Children and if they are safe and at good health, but it is hoped that Mrs. Rosasen still has physical custody as long as she continues to deny The Children parental access. The foreign Sovereign refuses to lift the entry ban, or end the tortious and systematically wrongful actions, by among others continuing to violate Plaintiffs fundamental rights to family life. The ongoing damages the torts have caused and continue to cause are among others immense suffering and emotional distress, related to the wrongful pursuit of and violations of Plaintiffs civil rights in a manner systematic which Plaintiff believes merits this suit being heard.

## FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS AGAINST ALL DEFENDANTS.
## (DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW)
## INTERFERENCE WITH PERSONAL RELATIONSHIP AND
## KIDNAPPING UNDER THE COLOR OF LAW

126.   Plaintiff incorporates the above allegations of fact and law as though fully set forth herein.

127.   Plaintiff ascertains that the Foreign Sovereign Kingdom of Norway instrumentalities and agencies tortious actions violated **Title 18 § 242,**

**Deprivation of rights under color of law.** Which reads, Whoever, <u>under color of any law, statute,</u> ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the <u>deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens,</u> shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or <u>if such acts include kidnapping or an attempt to kidnap,</u> aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

128.    Plaintiffs have not had physical consortium since April 3, 2020, and Plaintiff has not heard sign of life from The Children since March 29, 2021, as the Defendants, does not want The Children to know their father, Plaintiff. An NCPS document shows NCPS and Mrs. Rosasen suggesting that maybe in ten (10) years Plaintiffs can have parental consortium.

129.    As a result, and proximate result of Defendants' conduct as above, Plaintiff Mr. Rosasen has suffered, and continues to suffer, severe emotional distress, mental and emotional injury, humiliation, pain and suffering, disruption of his relationship with his children, intentional interference with his rights to consortium with his children, as well as other injuries not yet diagnosed. Plaintiffs, the Children, have suffered severe emotional distress and yet to be

diagnosed psychological long term negative developmental issues.

130. The full extent of these emotional and psychological damages will be subject of significant amounts of expert witness testimony and subject to proof at trial. Regardless, there is substantial, and, on information and belief, permanent emotional and psychological damages caused directly by Defendants actions.

131. Plaintiff as a direct result of the Defendant conduct as above, was required to employ legal counsel to assist and represent him in legal proceedings in California and in Norway seeking to stop the loss of the ability at shared custody and control.

132. Plaintiff have also incurred ancillary travel, hotel, food expenses, psychological costs, and loss of earnings while attempting to have Mrs. Rosasen return/rescued in the fall of 2019 and since while attempting to protect and restore the Children fundamental rights.

133. Plaintiff is informed and believes, and on said basis alleges, that additional costs of translations, investigatory, legal, travel, loss of wages, and other expenses will be incurred by Plaintiff in an effort to locate and be reunited with The Children. Plaintiff will ask leave of Court to amend this complaint to insert the correct amount of such other expenses when the same have been ascertained.

## SECOND CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
## AGAINST ALL DEFENDANTS (CONSPIRACY)

134. Plaintiff incorporates the above allegations of fact and law as though fully set forth herein.

135. At all times as listed above the Defendants willfully and knowingly aided, abetted and conspired to pressure Mrs. Rosasen by enticement, pressure, instillment of fear and alienation of affection into not returning to California and leaving Plaintiffs to fend for themselves.

136. Plaintiff alleges Defendant among others are in violation of The Hague

Convention Civil Aspect of International Child Abduction of 1980, article 3, article 7(f) and article 21 and the United Nation Convention on The Rights of The Child paragraph 9 section 1 and paragraph 10, which requires signatory states to facilitate physical access to children across borders other than their assumed habitual residence pending appeal as to assure the Children's rights to parental consortium.

137.   The full extent of Plaintiffs' emotional and psychological damages will be subject of significant amounts of expert witness testimony and subject to proof at trial. The present and future damages will be significant. Regardless, there are substantial, and on information and belief, permanent emotional, psychological and physical damages caused directly by Defendants' actions.

138.   The above-mentioned acts by Defendants 1-5 were intentional, fraudulent, willful, wanton, malicious and oppressive, and were committed in conscious disregard of the civil rights of Plaintiffs, so as to justify an award for damages.

**THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF AGAINST DEFENDANTS (FAILURE TO AWARD THE EQUAL PROTECTIONS OF THE LAW).**

139.   Plaintiff incorporates the above allegations of fact and law as though fully set forth herein.

140.   Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable.

141.   As a direct and proximate result of the actions of said Defendants heretofore described, Plaintiff has suffered the general specific damages alleged in the first cause of action.

142.   The tortious actions by Defendants were intentional, fraudulent, willful, wanton, malicious and oppressive, and were committed in conscious disregard of the rights of Plaintiff's civil rights, to justify an award of exemplary damages and restitution.

143.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer, physical, mental, and emotional injury all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

144.   Plaintiffs are informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Plaintiffs or acted with a willful, knowing, and conscious disregard for Plaintiffs' rights in a despicable, vile and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

### FOURTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS (VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION).

145.   Plaintiffs incorporate the above allegations of fact and law as though fully set forth herein.

146.   For the Children's seizure, Defendants, and each of them, at all relevant

times herein were acting under color of law when they jointly acted, or knew and agreed and thereby conspired, to violate Plaintiff's constitutional rights by, but not limited to, removing, detaining, and continuing to detain the Children from the care, custody, and control of their father, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order.

147.   At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was so "clearly established" that any reasonable person in Defendants' situation would know it is unlawful in the United States to seize a child from the care, custody, and control of its parents in the absence of exigent circumstances without first obtaining a warrant to do so. *See Keates v. Koile*, 883 F.3d 1228, 1239 (9th Cir. 2018); *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999).

148.   Furthermore, any reasonable person would know that to do so would constitute a violation of Plaintiffs' well-elaborated constitutional right to live together without undue governmental interference.

149.   None of the Defendants sought, or obtained any type of warrant or court order, prior to seizing the Children. Defendants, and each of them, jointly acted or conspired to seize the children, as described above, knowing that no warrant authorizing the child's seizure issued and that exigent circumstances did not exist. They also knew that Plaintiffs did not consent to the Children's unwarranted seizure.

150.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer, physical, mental, and emotional injury all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to

proof at trial.

151.   Plaintiffs are informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Plaintiffs or acted with a willful, knowing, and conscious disregard for Plaintiffs' rights in a despicable, vile and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

## FIFTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS (JUDICIAL DECEPTION)

152.   Plaintiffs incorporate the above allegations of fact and law as though fully set forth herein.

153.   The right to be free from judicial deception in juvenile dependency proceedings was clearly established prior to 2019, such that any reasonable government official in Defendants' situation would know that it was unlawful to lie, fabricate evidence, or suppress material exculpatory evidence in juvenile court proceedings.

154.   "No official with an IQ greater than room temperature in Alaska" could claim that he or she did not know that judicial deception and filing false statements in court reports violates both state and federal law. *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1118 (9th Cir. 2017).

155.   Among other material facts, critically, Defendants' court reports falsely stated that:

    a. Mr. Rosasen had been convicted of a sexual felony. This was untrue and was reported to the Court to make Mr. Rosasen look like an unsafe parent and remove The Children from the United States, without ability to prior contradiction of the facts.

- 27 -

b. Mr. Rosasen might physically or psychologically harm The Children or "( worse)" unless The Children where secured.

156. The above identified false statement and the suppressed evidence are only examples. They do not constitute the full extent of Defendants' deception in the presentation of evidence to the U.S. District Court in their multiple court reports.

157. Moreover, Defendants used unsubstantiated and factually untrue allegations to support the underseal motion, that the Children should be seized from Mr. Rosasen's custody.

158. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer, physical, mental, and emotional injury all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorney fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

159. Plaintiffs are informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Plaintiffs or acted with a willful, knowing, and conscious disregard for Plaintiffs' rights in a despicable, vile and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

**SIXTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS (STATE CAUSES OF ACTION)**

160. Plaintiffs incorporate the above allegations of fact and law as though fully set forth herein.

161. Plaintiffs allege that the Defendants' actions have violated California Penal Code §207 (Kidnapping), Penal Code §278 (Abduction), as well as California

Family Law code §3405, subsection (c), which reads: (3) *A court of this state need not apply this part if the child custody law of a foreign country violates fundamental principles of human right.*

162.   Plaintiff notes that international child abduction is a continuing tort for which the statute of limitations does not begin to run until the child is returned to her/his rightful custodians.

163.   Plaintiffs are informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Plaintiffs or acted with a willful, knowing, and conscious disregard for Plaintiffs' rights in a despicable, vile and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such conduct in the future.

**SEVENTH CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS AGAINST ALL DEFENDANTS (18 U.S.C. § 1961, *et seq.*)**

164.   Plaintiffs incorporate the above allegations of fact and law as though fully set forth herein.

165.   Under 18 U.S.C. § 1964, this Court has jurisdiction to impose civil remedies on Defendants for their violations of 18 U.S.C. § 1961, *et seq.*

166.   Under 18 U.S.C. § 1964(c), Plaintiff has standing to sue to recover for damages caused by Defendants' violations of 18 U.S.C. § 1961.

167.   Defendants' consistent pattern of kidnapping children constitutes a racketeering activity as defined by 18 U.S.C. § 1961. Defendants are part of a "corrupt organization," as detailed in 18 U.S.C. § 1961, *et seq.* Moreover, Defendants have subjected themselves to the Court's jurisdiction by performing their activities in this District as detailed above.

168.   Defendants, in seizing Plaintiff's children, has engaged in international

kidnapping. Moreover, this is not the first instance that Norway has engaged in such activities. (*See Risk v. Norway*, Case No. C-88-1435WWS, from the U.S. District Court in the Northern District of California and EXHIBIT 2, p.41-51). This constitutes a "pattern" of activity as defined by 18 U.S.C. § 1961.

169.   Under 18 U.S.C. § 1964(c), Plaintiff, in addition to compensatory and punitive damages, is also entitled to any reasonable attorney's fees.

170.   Plaintiffs are informed and believes and thereon alleges that Defendants, and each of them, acted with malice and with the specific intent to cause injury to Plaintiffs or acted with a willful, knowing, and conscious disregard for Plaintiffs' rights in a despicable, vile and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing these Defendants, and each of them, in order to deter them, and others, from such tortious conduct in the future.

## **PRAYER FOR RELIEF**

a) Plaintiffs seeks restitution for damages, and prayer of relief under the Foreign Sovereign Immunities Act of 1976, FSIA according to 28 U.S.C. §§ 1330,1332, 1391(f), 1441(d), and §§1602-1611 as the only remedy to allow consortium and restitution for civil rights violations. All Plaintiffs have suffered from extreme emotional and psychological damages that are severe and likely permanent as a result of Defendants' actions. Moreover, Plaintiff Mr. Rosasen has also lost wages and future earnings and has thus suffered present and future monetary damages. Plaintiff currently estimates his monetary damages to be approximately $100,000,000.00 in damages. This number may change based on evidence to be uncovered during discovery and proof at trial, including expert testimony.

b) Plaintiff seeks to obtain reassurances from The Norwegian Central Authority, Defendant 2, that any U.S. Court order in any related appeal

will be enforced.

c)  Plaintiff requests that the Court reassures that such decisions are enforceable by law in both jurisdictions.

d)  Plaintiff requests that the Court order weekly phone conversations for Plaintiffs during the time the Children are not in the United States.

e)  Plaintiff requests that the Court order that Defendants return the Children to Plaintiff and California, in the event Defendant would deem Mrs. Rosasen unfit.

f)  Plaintiffs have had damages that cannot be measured in monetary compensation, the damages that will be sought at Court are on the assumption that the Children are alive, have not been subjected to physical abuse, and will be presented at trial.

g)  Plaintiff requests that the Court order that the Children shall remain in Mrs. Rosasen's custody and that for their emotional stability and security, the Children shall be physically in the United States with their father, Plaintiff, for at least three (3) months a year.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims asserted herein as far as the Foreign Sovereign Immunities Act does not prohibit trial by jury as it normally does punitive damages.

Dated: August 23, 2021.                    Respectfully submitted,

By: /s/ _____

MARLON ABRAHAM ROSASEN

Plaintiff *Pro Per*