UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

| Present: The Honorable | Sheri Pym, United States Magistrate Judge | |
|---|---|---|
| Kimberly I. Carter | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None Present | | None Present |

**Proceedings:** **(In Chambers) Order to Show Cause Why the Case Should Not Be Dismissed for Lack of Jurisdiction**

## I. INTRODUCTION

On December 20, 2021, plaintiff Marlon Abraham Rosasen filed a Motion for Default (docket no. 25), which the court considers in a separate order. In the process of determining whether plaintiff properly served defendants, however, the court identified several potential issues with jurisdiction. Accordingly, for the reasons explained below, the court orders plaintiff to show cause why the case should not be dismissed for lack of jurisdiction.

## II. BACKGROUND

On August 24, 2021, plaintiff filed a Complaint alleging that the Kingdom of Norway and several of its departments and instrumentalities conspired to abduct his children and remove them to Norway. *See generally* Compl. Plaintiff alleges that defendants took his children even though he shares custody with their mother. *See id.* ¶ 11. The following background is taken from plaintiff's Complaint, which is unclear at times.

Plaintiff's twin children, D.T.R. and L.A.R., were born in the United States in 2015, but it appears the family relocated to Norway at some point after their birth. *Id.* ¶¶ 41-43. In June of 2019, plaintiff found out that his former psychologist sent a "concern" to Norway's Child Protective Services ("NCPS"). *Id.* ¶ 44. A week later, plaintiff was deported from Norway due to his criminal record, and NCPS started an investigation into his wife's parental abilities. *See id.* ¶¶ 35, 43, 45. In July of 2019, the family met in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

Denmark with the intention to return to the U.S. *See id.* ¶¶ 46-49. The mother instead returned to Norway, leaving the children with plaintiff in Denmark. *See id.* ¶¶ 50-53. Defendants enlisted the police to convince the mother to bring the children back to Norway in exchange for a favorable outcome to the NCPS investigation against her. *See id.* ¶¶ 51-54. The mother alerted plaintiff, who took the children to the U.S. *See id.* ¶ 54.

When NCPS learned the children were taken to the U.S., it contacted one of the other defendants to falsely accuse plaintiff of being homeless and a violent offender. *See id.* ¶ 55. Meanwhile, plaintiff was attempting to locate his wife with the help of the U.S. Department of State. *See id.* ¶¶ 57-59. He was able to find her, but she told him that NCPS demanded that she not travel to the U.S. due to the investigation into her parental abilities. *See id.* ¶ 59. Plaintiff ultimately filed for separation and joint custody in Los Angeles Superior Court on September 23, 2019. *See id.* ¶ 60.

In or around October and November of 2019, defendants retained a law firm and sought the children's return to Norway under the Hague Convention. *See id.* ¶¶ 62-64. Plaintiff filed an emergency motion to prevent the children's removal from Los Angeles County. *See id.* ¶ 65. Instead of appearing at the hearing on that motion, defendants filed their own sealed motion in federal court.[1] *See id.* ¶¶ 66-68. Plaintiff's ex-wife arrived to the U.S. in December of 2019, at which time she was served with a temporary custody order and travel ban. *See id.* ¶ 69.

Plaintiff accuses defendants of attempting to bypass U.S. law in their efforts to return the children to Norway. *See id.* ¶ 70. On January 6, 2020, after plaintiff met with his ex-wife, defendants filed a request for an arrest warrant in state court, which was granted two days later. *See id.* ¶ 71. It is unclear from the Complaint what happened with that warrant.

On January 10, 2020, the family court stayed plaintiff's case pending the outcome

---

[1] Plaintiff seems to be referring to *Thea Marie Rosasen v. Marlon Abraham Rosasen*, No. 2:19-cv-10742-JFW (AFMx) (C.D. Cal.). The court takes judicial notice of the docket in that case. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings in other cases). But defendants' alleged role in that case is unclear. Nevertheless, for purposes of this order, the court treats plaintiff's allegations as true.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

of the federal Hague Convention case filed by defendants. *See id.* ¶ 74. Plaintiff claims that defendants abused the process in various ways. *See id.* ¶¶ 78-88. As a result of one of defendants' misrepresentations, the federal court overseeing the Hague Convention case ordered the U.S. Marshals to seize the children. *See id.* ¶ 88. On April 3, 2020, law enforcement found plaintiff in Iowa, detained him, and took the children. *See id.* ¶ 89. The children were returned to Norway shortly after. *See id.* ¶ 90. Once there, NCPS took legal custody of the children but allowed plaintiff's ex-wife to have physical custody only if she agreed to raise them in Norway without contact with plaintiff. *See id.* ¶ 93.

Plaintiff sought relief from the Ninth Circuit. *See id.* ¶ 96. On December 7, 2020, defendants offered to allow the children to visit the father in the U.S., but only if he withdrew his appeal. *See id.* ¶ 103. It appears plaintiff refused to do so.

Plaintiff also filed a request for the children's return in a Norwegian court pursuant to the Hague Convention. *See id.* ¶ 101. He claims that the Oslo District Court did not give him a proper opportunity to be heard. *See id.* ¶ 104. On December 23, 2020, the court ruled against plaintiff. *See id.* ¶ 105. He alleges the decision violated international law and treaties. *See id.* The decision was affirmed by both an intermediate appeals court and the Supreme Court of Norway. *See id.* ¶¶ 107, 111. Plaintiff apparently has not heard from his children since November 2020. *See id.* ¶ 110.

Although not entirely clear, it appears plaintiff seeks to raise the following legal claims: (1) interference with personal relationship and kidnaping under color of law; (2) conspiracy to violate the Hague Convention and United Nations regulations; (3) equal protection; (4) right to familial association; (5) warrantless seizure; (6) judicial deception; (7) state law kidnaping; (8) state law abduction; (9) violation of Family Law Code § 3405(c); and (10) racketeering. Plaintiff seeks monetary damages, declaratory relief, and an injunction allowing him to have phone conversations and visits with his children.

### III. DISCUSSION

"[A] federal court may dismiss *sua sponte* if jurisdiction is lacking." *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983) (citations omitted). Courts frequently consider jurisdiction sua sponte in cases involving foreign governments and individuals. *See Rizvi v. Dep't of Soc. Servs.*, 828 F. App'x 818, 820-21 (3d Cir. 2020) (trial court permitted to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

consider sua sponte problems with jurisdiction under the Foreign Sovereign Immunities Act); *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 323 (9th Cir. 1996) (courts must raise sua sponte issues concerning subject matter jurisdiction).

### A.     Identification of Defendants

To begin, it is unclear who the defendants in this case are. In the caption of the Complaint, plaintiff names a list of foreign departments and individuals he alleges are associated with each of those departments, e.g., Ministry of Health and Care Services for Oslo University Hospital *and* Thale Bostad. But in the body of the Complaint, plaintiff appears to indicate that the only "named defendants" are the individuals. *See, e.g.*, Compl. ¶ 19 (indicating that the "named Defendant" is Bostad).

The court orders plaintiff to clearly identify each of the defendants he intends to name in this action. This is particularly important in this case because it will affect the court's analysis of jurisdiction and the adequacy of service of process. For now, the court will assume that plaintiff intended to name each of the departments and individuals listed on the caption of his Complaint, namely:

1. The Kingdom of Norway (hereinafter "Norway")
2. The County Governor of Oslo and Viken (hereinafter "the governor")
3. Valgerd Svarstad Haugland
4. Suzanne Rusten
5. Norway's Ministry of Justice and Public Security, Department of Civil Affairs (hereinafter "MJPS")
6. Hanna Kristiane Rummelhoff
7. Hege Skaanes Nyhus
8. Linn Krosveen
9. Norway's Ministry of Children and Families for the Directorate for Children, Youth, and Family Affairs (hereinafter "MCF")
10. Mari Trommald
11. St. Hanshaugen, Oslo Child Protective Services and Measure Section (hereinafter "OCPS")
12. Per Helge Nesse Rise
13. Maria Knudsen
14. Silje Erake Gudmestad

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

15. Annette Sophie Lorck-Falk
16. Norway's Ministry of Health and Care Services for Oslo University Hospital (hereinafter "MHCS")
17. Thale Bostad

### B. Jurisdiction Over Foreign States and Their Political Subdivisions, Agencies, and Instrumentalities

The Foreign Sovereign Immunities Act ("FSIA") is the "sole basis for obtaining jurisdiction over a foreign state in a civil action." *Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 589 (9th Cir. 2020) (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992)). A "foreign state," except as that term is used in § 1608, includes its political subdivisions, agencies, and instrumentalities. 28 U.S.C. § 1603(a). An agency or instrumentality of a foreign state refers to any entity:

(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Federal courts have automatic personal jurisdiction over a foreign state if one of the FSIA's enumerated exceptions to immunity applies (*see* 28 U.S.C. §§ 1604, 1605, 1607) and service of process has been accomplished pursuant to § 1608 of the FSIA. *See Samantar v. Yousuf*, 560 U.S. 305, 324 n.20, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010) (quoting 28 U.S.C. § 1330(b)).

Here, Norway, the governor,[2] MJPS, MCF, OCPS, and MHCS (the "entity defendants") appear to be within the definition of a foreign state, political subdivision, agency, or instrumentality. But to exercise jurisdiction over these entities, one of the

---

[2] The court assumes plaintiff intends to sue the office of the governor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

FSIA's exceptions must apply.

Plaintiff appears to argue that the court has jurisdiction pursuant to two separate FSIA exceptions, the commercial activity and the tortious activity exceptions. *See* Compl. ¶ 4. First, the commercial activity exception provides that foreign states are not immune from jurisdiction in actions:

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity in the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2). To determine whether an act constitutes a commercial activity, courts look to the nature of the activity in question, rather than to its purpose. *Park v. Shin*, 313 F.3d 1138, 1145 (9th Cir. 2002) (citation omitted). "Even if performed with a public purpose in mind, acts by governmental entities are considered commercial in nature if the role of the sovereign is one that could be played by a private actor." *Id.* (citing *Weltover*, 504 U.S. at 614-15).

The court notes that plaintiff may not have intended to argue jurisdiction under the commercial activity exception to immunity. In the Complaint, he mentions the exception but proceeds to cite and quote only the tortious activity exception. *See* Compl. ¶ 4 (citing only 28 U.S.C. § 1605(a)(5)). And indeed, the court is not persuaded that the alleged conduct of the entity defendants can be considered commercial in nature.

Second, the FSIA's "tortious activity" exception permits jurisdiction where:

> money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment[.]

28 U.S.C. § 1605(a)(5). But the exception does not apply to claims (1) "based upon the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused" or (2) "arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *See id.* at (a)(5)(A) to (B).

Here, most of the alleged violations took place in Norway. *See, e.g.*, Compl. ¶¶ 34-36, 44-46, 49-55, 59, 62, 92-95, 104-17. The tortious activity exception would not apply to those acts. Plaintiff does also allege that defendants took several actions in the U.S. in connection with the prior federal case, *Rosasen v. Rosasen*, that resulted in the minor plaintiffs' return to Norway. *See, e.g., id.* ¶¶ 67-68, 70-71, 73-74, 78-79, 81-82, 84, 88-89, 91. But it appears the entity defendants' role in that case, if any, would be protected by the discretionary function exclusion to jurisdiction. *See* 28 U.S.C. § 1605(a)(5)(A).

To determine whether the discretionary function exclusion applies, courts employ a two-step inquiry. First, the court considers whether the government defendant had any discretion to act or if there was an element of choice as to appropriate conduct. *See Risk v. Halvorsen*, 936 F.2d 393, 395 (9th Cir. 1991) (citation omitted). Second, the court evaluates whether the decisions at issue were grounded in social, economic, and political policy, concentrating on the nature of the conduct rather than the status of the decisionmaker. *See id.* (citations omitted).

Plaintiff argues that the discretionary function exclusion does not bar jurisdiction because defendants violated their own internal laws, international law, and Norway's treaty obligations. *See id.* ¶ 123. In support of his argument, plaintiff cites three cases, all of which actually undermine his position.

In *Risk v. Halvorsen*, a father sued Norway and two of its consular officials for tortious acts in connection with the removal of his children from the U.S. 936 F.2d at 394. He alleged that the foreign defendants interfered with parent-child relations, intentionally inflicted him with emotional distress, and conspired to remove his children from California. *Id.* Despite the serious allegations, the Ninth Circuit affirmed the district court's finding that the discretionary function exclusion shielded Norway from jurisdiction. *See id.* at 397. The court found that Norway was exercising its discretion, rooted in social, economic, and political policy, in advising and assisting the mother, a Norwegian citizen, and her children with leaving the U.S. *See id.* at 395.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

The allegations and legal claims in *Risk* are similar to the ones here, so the same result appears justified. In fact, the allegations against Norway in *Risk* were more serious because it allegedly assisted the mother with removal of the children in violation of a state court custody order, which is a felony in California. *See id.* at 394-96. Here, even if the entity defendants assisted plaintiff's ex-wife with removing the children, they did so only after a federal court allowed them to do so. *See* Min. Order, docket no. 96, *Rosasen v. Rosasen*, No. 2:19-cv-10742. Thus, the Ninth Circuit's reasoning in *Risk* appears even more applicable to the facts of this case.

The court is also not persuaded by plaintiff's conclusory argument that the discretionary function exclusion does not apply because defendants violated their own laws, international law, and treaty obligations. *See* Compl. ¶ 124. In support of that argument, plaintiff cites *Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989), and *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980). But as the *Risk* court noted, the alleged misconduct in those cases – state-sponsored assassinations – was far more severe. *See Risk*, 936 F.2d at 396-97 ("[I]t cannot be said that every conceivable illegal act is outside the scope of the discretionary function exception."); *Broidy*, 982 F.3d at 586, 590-93 (applying discretionary function exclusion to Qatar's alleged hacking of computer servers to steal and leak confidential information to the media). Further, like the plaintiff in *Risk*, plaintiff here does not actually identify the Norwegian internal law that defendants allegedly violated. *See Risk*, 936 F.2d at 396.

Finally, the exclusion for claims arising out of malicious prosecution and abuse of process also appears to weigh in favor of denying jurisdiction. *See* 28 U.S.C. § 1605(a)(5)(B). Plaintiff argues that defendants' alleged conduct in connection with the prior federal case constituted malicious prosecution. *See* Compl. ¶¶ 33, 68. Further, most if not all of plaintiff's allegations involve defendants' alleged abuse of the U.S. judicial process to return the children to Norway. *See Khochinsky v. Republic of Poland*, 1 F.4th 1, 11 (D.C. Cir. 2021) (the term "abuse of process" concerns the wrongful use of legal process).

In sum, the court is not convinced that it has jurisdiction over the entity defendants under the FSIA. *See, e.g.*, *Rizvi*, 828 F. App'x at 819-20 (no FSIA jurisdiction where father alleged Switzerland colluded with U.S. agencies to interfere with his parental rights by raising false allegations of child abuse).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

### C. Jurisdiction Over Foreign Individuals

There are two main issues with plaintiff's naming of the individual defendants. First, because plaintiff is suing them in their official capacity (*see* Compl. ¶ 20), the claims might be better construed as against Norway itself. Second, even if the court allows the individual claims to proceed, common law foreign sovereign immunity extends to individual foreign officials for certain acts performed in their official capacity.[3]

As to the first issue, plaintiff states that all defendants "are employees of the foreign Sovereign and acted within the scope of their employment of the foreign Sovereign[']s instrumentalities and agencies." Compl. ¶ 20. Indeed, he makes clear that out of all defendants, his quarrel really is with Norway and its departments. He alleges that Norway's judicial history shows systematic flaws in its ability to protect family rights and a "rampant chauvinistic belief" that it is better to raise children in Norway than anywhere else. *See id.* ¶¶ 26, 28. He also claims that the European Court of Human Rights ("ECHR") has found Norway guilty of violating the rights of families on eight occasions since 2018. *Id.* ¶ 12. According to plaintiff, the ECHR and the United Nations have demanded judicial and legislative change. *Id.* ¶ 28. Given the focus of plaintiff's allegations, the court is inclined to find that his claims against the individual defendants should be construed as against Norway itself. *See Samantar*, 560 U.S. at 325 ("[I]t may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." (citation omitted)); *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34-35 (D.D.C. 2013) (treating suit against individual officials acting in their official capacity as a suit against the foreign state); *Gomes v. Angop*, 2012 WL 3637453, at *18-19 (E.D.N.Y. Aug. 22, 2012) (real party in interest was foreign state where plaintiff made only official-capacity claims).

---

[3] In addition, plaintiff's allegations raise concerns regarding personal jurisdiction over the individual defendants. Nevertheless, a party may waive personal jurisdiction, so considering the issue sua sponte may be premature and prejudicial to plaintiff. *See Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1076 (9th Cir. 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

Regarding the second issue, the FSIA does not immunize individual government officials of a foreign state, even if acting on its behalf. *See Samantar*, 560 U.S. at 319, 324-25. But "[e]ven if a suit is not governed by the Act, it may still be barred by foreign sovereign immunity under the common law." *Id.* at 324. In the Ninth Circuit, "[c]ommon-law foreign sovereign immunity extends to individual foreign officials for acts performed in their official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Doğan v. Barak*, 932 F.3d 888, 893-94 (9th Cir. 2019) (quoting Restatement (Second) of Foreign Relations Law § 66(f) (1965)). This "conduct-based immunity" is available to any public minister, official, or agent of the foreign state. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 664 (N.D. Cal. 2020) (citation omitted); *Yenovkian v. Moor*, 2021 WL 3666448, at *4-5 (S.D. Cal. Aug. 18, 2021). District courts lack subject matter jurisdiction over claims to which common law foreign sovereign immunity applies. *See Yenovkian*, 2021 WL 3666448, at *4 (citations omitted).

Because plaintiff alleges that the individual defendants acted in their official capacity, the only question left is whether the effect of exercising jurisdiction over them would be to enforce a rule of law against the state. The answer appears to be yes. Regarding plaintiff's request for restitution, it is likely that any potential damages would be paid by the government of Norway given the nature of plaintiff's allegations. *See Odhiambo*, 930 F. Supp. 2d at 35 (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (plaintiff seeking damages in an official-capacity suit must look to government entity itself). As for the injunctive and declaratory relief that plaintiff seeks, it would also have to come from the government of Norway. Namely, plaintiff seeks: (1) reassurances from the Norwegian government that any order from the Ninth Circuit concerning plaintiff's appeal would be enforced; (2) reassurances that any other U.S. court decisions would be enforceable in Norway; (3) an order requiring Norway to return the children to California if it determines that his ex-wife is unfit to care for them; and (4) an order requiring that the children remain in his ex-wife's custody, regardless of Norway's findings about her ability to care for them. *See* Compl., Prayer for Relief at (a), (b), (c), (e), (g). Plaintiff also seeks weekly phone calls and visitation in the U.S. for at least three months out of every year. *See id.* at (d), (g). At first glance, it seems that the court could craft an order that would not require affirmative action from Norway with respect to the calls and visitation. *See WhatsApp*, 472 F. Supp. 3d at 665. But plaintiff alleges that the Norwegian government has ordered his ex-wife to avoid contact between the children and plaintiff. *See* Compl. ¶ 93. The ex-wife is also not a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-06811-JWH (SP) | Date | February 10, 2022 |
|---|---|---|---|
| Title | MARLON ABRAHAM ROSASEN, et al. v. KINGDOM OF NORWAY, et al. | | |

party to this case. Thus, whatever action plaintiff seeks with regard to contact and visitation, he seems to expect that it would come from the government itself.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the court orders as follows:

1. Plaintiff must clearly and unequivocally identify each of the defendants he seeks to name in this action, including foreign states, political subdivisions, agencies, instrumentalities, and individuals.

2. Plaintiff is ordered to show cause why the court should not find that the entity defendants are immune under the FSIA.

3. Plaintiff is ordered to show cause why the court should not construe the claims against the individual defendants as claims against Norway itself.

4. Plaintiff is ordered to show cause why the court should not find that the individual defendants are protected by common law foreign sovereign immunity.

The court orders plaintiff to respond to this order to show cause addressing each of these four issues **no later than February 25, 2022.  The court warns plaintiff that failure to respond may result in dismissal of the case without further notice to plaintiff.**